**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DMITRY VITALYEVICH BUGAYENKO**<br>  Orfeos 8, Apt. 501<br>  1070 Nicosia, Cyprus<br><br>**VELES INTERNATIONAL LIMITED**<br>  23 Kennedy av.<br>  Globe House, 5th Floor<br>  1075 Nicosia, Cyprus<br><br>**HADLERCO LIMITED**<br>  Zinas Kanther 12,<br>  Marilena Building, Floor 1,<br>  Office 101<br>  1065 Nicosia, Cyprus<br><br>            *Plaintiffs,*<br><br>    V.<br><br>**JANET YELLEN**<br>    **in her official capacity as Secretary<br>    of the United States Department of<br>    the Treasury**<br>    1500 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20220<br><br>**and**<br><br>**THE UNITED STATES DEPARTMENT<br>OF THE TREASURY**<br>    1500 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20220<br><br>**and**<br><br>**BRADLEY T. SMITH**<br>    **in his official capacity as<br>    Director of the United States<br>    Department of the Treasury<br>    Office of Foreign Assets Control**<br>    1500 Pennsylvania Avenue, N.W. | **CASE NO.**<br><br>**JURY TRIAL: NO** |

>Freedman's Bank Building
>Washington, D.C. 20220
>
>**and**
>
>**THE UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL**
>  1500 Pennsylvania Avenue, N.W.
>  Freedman's Bank Building
>  Washington, D.C. 20220
>
>  *Defendants*.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Dmitry Vitalyevich Bugayenko, Veles International Limited ("Veles International"), and Hadlerco Limited ("Hadlerco") bring this Complaint for Declaratory and Injunctive Relief against Defendants, the United States Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Bradley T. Smith (collectively, the "Defendants") and in support of their complaint allege:

### Introduction

1.  Plaintiffs Dmitry Vitalyevich Bugayenko, Veles International, and Hadlerco (collectively, the "Plaintiffs") bring this lawsuit to dispute Defendants' unwarranted designation of Plaintiffs as Specially Designated Nationals ("SDNs") and Defendants' prolonged failure to adjudicate Plaintiffs' request for recission of the sanctions. On February 24, 2023, Plaintiffs were sanctioned pursuant to Executive Order 14024 of April 15, 2021 ("E.O. 14024"), purportedly as part of the campaign to curb Russian aggression against Ukraine. Mr. Bugayenko was sanctioned for "operating or having operated in the financial services sector of the Russian

economy."[1] Veles International and Hadlerco were sanctioned for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Mr. Bugayenko.[2]

2. Defendants' stated justifications for the sanctions are without merit. Mr. Bugayenko has never supported any of the "Harmful Foreign Activities of the Government of the Russian Federation" specified in E.O. 14024 (the authority under which he was sanctioned), has never held a position in the Russian government, has never supported Russian aggression in Ukraine (or anywhere else) and has never engaged in sanctions evasion. To the contrary, he is a self-made businessman who has repeatedly been the victim of official corruption in Russia and who has spoken out publicly against it. Because of official corruption in Russia, he decided to leave Russia. He became a citizen of Cyprus in 2013, and has maintained his primary residence there since 2019. At great personal risk given his remaining ties to Russia at the time, almost two years before being sanctioned, he authored an article (attached as Exhibit 1, in original and with English translation) publicly denouncing official corruption in Russia and the Putin regime's role in fostering it. Knowing that after the publication of such an article, he could not remain in Russia, he left Russia for good in 2021. Nevertheless, on February 24, 2023, Mr. Bugayenko was sanctioned by Defendants for ostensibly supporting the regime's "harmful foreign activities" by participating in the Russian financial services sector.[3] Neither at the time of his designation, nor at any time since, have the Defendants alleged that he provided support to the Russian regime or engaged in sanctions evasion, sanctions circumvention, or any form of illegal activity.

---

[1] Press Release, U.S. Department of the Treasury, Targeting Key Sectors, Evasion Efforts, and Military Supplies, Treasury Expands and Intensifies Sanctions Against Russia (Feb. 24, 2023), https://home.treasury.gov/news/press-releases/jy1296.
[2] *Id.*
[3] *Id.*

3.     Mr. Bugayenko is of Ukrainian nationality and has been living his life outside of Russia for some time. As noted above, he has been a citizen of Cyprus since 2013 and has had primary residency there since 2019. Although Mr. Bugayenko did previously participate in the Russian financial services sector through the Veles Group (further described below in paragraphs 19-24), he has not been involved in the Russian operations of that business since 2020. Mr. Bugayenko's only existing connection to Russia is payment of nominal taxes and occasional visits to friends and family.

4.     Mr. Bugayenko is in the process of selling Plaintiff Veles International, which was sanctioned solely because of its connection to Mr. Bugayenko and is his only remaining connection to the Veles Group, to a U.S. partnership that is regulated by and reports to the U.S. government. The sale has not been completed solely due to Defendants' inaction in responding to a license application submitted by the purchaser seeking authorization for the transaction.

5.     Plaintiff Hadlerco, like Veles International, was sanctioned solely due to its connection with Mr. Bugayenko and is devoted exclusively to managing Mr. Bugayenko's personal investments. It did not participate in the Russian financial services sector (other than transacting in certain publicly traded securities) and has never engaged in, or facilitated, sanctions evasion or supported Russia's war in Ukraine in any way.

6.     Because the justification for the sanctions was so sparse, only citing Mr. Bugayenko's participation in the financial services sector, Mr. Bugayenko repeatedly sought additional information. On August 8, 2023, through counsel, he requested the administrative record underlying his designation. He renewed that request on December 4, 2023, as part of his application for recission, also requesting the record for Veles International and Hadlerco. Although the records for Veles International and Hadlerco were never provided, finally, on

November 21, 2024, OFAC provided a "courtesy document" that purportedly explains the reasoning for Mr. Bugayenko's designation. This "courtesy document," further described in paragraphs 40 and 41, cites only to the Plaintiffs' legal economic activities, with no reference to Russian politics. In short, the available evidence fails to identify any connection between Mr. Bugayenko and any aspect of Russian foreign policy, much less the "harmful foreign activities" specified in E.O. 14024, sanctions evasion, or the war in Ukraine.

7. Rather than furthering U.S. policy in Ukraine, the continued sanctions on Plaintiffs send an absurd message – even SDNs who withdraw from Russia and denounce the government will nevertheless remain sanctioned, with no hope for rescinding their designation despite changed behavior. Under such circumstances, SDNs will have little choice but to stay in Russia and support the regime, thus increasing Putin's control over them. This is counterproductive and inconsistent with Defendants' stated policy goals and oft-invoked mantra that "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."[4] It is hard to imagine what more Mr. Bugayenko could do to change his behavior, yet he and the other Plaintiffs remain sanctioned.

8. Moreover, the Defendants clearly know about Mr. Bugayenko's change in behavior. On December 4, 2023, Plaintiffs collectively filed an application for recission of their designations, providing details on Mr. Bugayenko's exit from Russia. That application has been pending with Defendants for over one year. On April 10, 2024, OFAC sent a questionnaire, to which Plaintiffs promptly responded by providing more detailed information including about Mr. Bugayenko's exit from Russia. Through counsel, Plaintiffs requested updates on the status of their

---

[4] *See* U.S. Dep't of the Treasury, *Filing a Petition for Removal from an OFAC List,* https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.

application on August 8, 2024 and September 26, 2024.  However, on both occasions, OFAC responded only with a form reply – that the correspondence was received, that the request was under review, and that no timeframe was available. Apart from this, Defendants have not substantively engaged with Plaintiffs.  The application has not been acted upon and the Defendants have provided no indication as to when a decision might be rendered.  Accordingly, Plaintiffs have been left with no choice but to seek judicial intervention.

## Jurisdiction and Venue

9. This action arises under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10. This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure.  This Court may grant injunctive relief pursuant to Rule 65.

11. Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## The Parties

12. Plaintiff Dmitry Vitalyevich Bugayenko is a dual citizen of Cyprus and Russia, who has resided primarily in Cyprus since 2019.  On February 24, 2023, he was sanctioned by OFAC pursuant to E.O. 14024 for operating or having operated in the financial services sector of the Russian Federation economy.

13. Plaintiff Veles International is a limited liability company operating in Cyprus. On February 24, 2023, the company was sanctioned pursuant to E.O. 14024 solely for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Mr. Bugayenko.

14. Plaintiff Hadlerco is a limited liability company operating in Cyprus. On February 24, 2023, the company was sanctioned pursuant to E.O. 14024 solely for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Mr. Bugayenko.

15. Defendant the U.S. Department of the Treasury is a cabinet-level governmental department, led by the Secretary of the Treasury. In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions in response to foreign threats to the United States. It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

16. Defendant Janet Yellen is the Secretary of the Treasury of the United States. Secretary Yellen is sued in her official capacity.

17. Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW-Annex, Washington D.C. 20220. OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024. Further, under 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively, it is the sole administrative agency responsible for the reconsideration and delisting process.

18. Defendant Bradley T. Smith is the Director of OFAC. Director Smith is sued in his official capacity.

## Factual Allegations

### A. The Veles Group

19. After graduating college, Mr. Bugayenko founded IC Veles Capital LLC ("Veles Capital"), together with Aleksei Gnedovskii, using their own personal funds as startup capital. Veles Capital, the origin of the Veles Group, was one of the first Russian investment companies. It was founded in the mid-1990s and helped develop the Russian capital markets by facilitating private investment in small to mid-cap developing companies. Its business was focused on middle class consumers in the Russian Federation.

20. Due to its success, Veles Capital was able to expand. In 2005, it established a Cyprus-based subsidiary, Veles International, which was formed to represent Veles Capital outside of Russia. Veles International provides brokerage services, as well as depository services for financial instruments, and operates pursuant to a license issued by the Cyprus Securities and Exchange Commission, which requires due diligence screening and compliance with all relevant anti-money laundering and securities regulations. It does not offer any consulting or portfolio management services. As a regulated entity, Veles International provides public disclosures regarding its operations on an annual basis.

21. Veles International has never had any offices or employees in Russia. It also has a designated compliance officer appointed to administer its compliance policies, which includes monitoring of sanctions imposed by the United Nations, European Union and United States. Veles International has repeatedly rejected clients for compliance reasons. It also carefully

screens intermediaries and has rejected transactions where those intermediaries are not sufficiently transparent. Veles International has never been cited for, or accused of, any regulatory violations.

22. Veles Capital also had other offshoots -- Veles Aktiv OOO ("Veles Aktiv"), Veles Management Ltd. ("Veles Management"), and Limited Liability Company Veles Trust ("Veles Trust," and collectively defined as the "Veles Group"), that are not the subject of this Complaint. Veles Management was created in 2004 to manage securities investments. In 2018, Mr. Bugayenko and Mr. Gnedovskii acquired an entity that subsequently became Veles Trust to manage real estate investments. In 2020, Mr. Gnedovskii, completely independently of Mr. Bugayenko, established Veles Aktiv, which provides various financial services including securities trading to Russian clients in Russia.

23. Hadlerco has, at all times, operated separately and apart from the Veles Group. Hadlerco was formed in 2000 and has only ever served as Mr. Bugayenko's personal investment vehicle. It is based in Cyprus and has no offices or employees in Russia. It has never had any other clients or connection to Russia (other than occasionally investing in certain publicly traded Russian securities). In any event, since Cyprus is classified as an "unfriendly" country by the Russian government,[5] Hadlerco is effectively barred from initiating new investments in Russian securities.[6]

24. Mr. Bugayenko's only involvement in the Russian financial services sector has been through the Veles Group. All of the companies that form the Veles Group, as well as Hadlerco, Mr. Bugayenko and Mr. Gnedovskii were sanctioned on February 24, 2023.

---

[5] Chris Devonshire-Ellis, *Understanding Russia's Unfriendly Countries List*, Russia Briefing (Oct. 23, 2023), https://www.russia-briefing.com/news/understanding-russia-s-unfriendly-countries-list.html/.

[6] *See* Resolution of the Government of the Russian Federation No. 295 (March 6, 2022), http://actual.pravo.gov.ru/text.html#pnum=0001202203070002. Such transactions, involving persons or entities in "unfriendly countries," cannot be executed without prior approval from the Government Commission for Control of Foreign Investments in the Russian Federation.

## B. Mr. Bugayenko's Withdrawal from Russia and from the Veles Group

25. In 2013, Mr. Bugayenko became concerned by the negative direction that Russian politics was taking and acquired Cypriot citizenship. After his concerns were exacerbated by the annexation of Crimea in 2014, Mr. Bugayenko slowly withdrew from Russia and eventually made Cyprus his official primary residence in 2019. He continues to reside there with his family.

26. At the same time, Mr. Bugayenko also withdrew his business from Russia. In late 2019, Mr. Bugayenko began to gradually transfer his shares of Veles Capital into a closed-end investment fund, which would serve as the vehicle for his withdrawal from that entity. This withdrawal took some time to fully effectuate.

27. Around 2020, the Veles Group began a concerted effort to separate the Veles Groups' Russian and non-Russian components. As part of this transition, in August 2021, Mr. Bugayenko sold the entirety of his interest in Veles Trust (the entity established for real estate investments) to his business partner, Mr. Gnedovskii. This gave Mr. Gnedovskii sole ownership of Veles Trust and also meant that Mr. Bugayenko lost influence over Veles Capital (because Veles Trust made investment decisions for Veles Capital).

28. In April 2022, ownership of Veles International was transferred to Mr. Bugayenko (whereas it was previously owned by Veles Capital). This formalized the existing process whereby Veles International was divorced from Russian operations of the rest of the Veles Group. At the same time that this was happening, the closed-end investment fund that held all shares of Veles Capital began to issue additional shares thus diluting Mr. Bugayenko's stake and concurrently increasing Mr. Gnedovskii's stake. Again, this was done to formalize the existing

arrangement whereby Mr. Gnedovskii was responsible for the Russian operations of the Veles Group, and where Veles Capital handled those operations.

29. After his designation, Mr. Bugayenko continued to take additional steps to finalize his withdrawal from the Veles Group. Mr. Bugayenko withdrew from Veles Management and completed his withdrawal from the closed-end investment fund. As a result, he was left with no ownership stake in Veles Capital and no ability to influence its decisions. He also initiated the process of selling Veles International to an American buyer (see above at paragraph 4).

30. All of the foregoing facts demonstrating Mr. Bugayenko's separation from Russia were set forth in detail in his delisting petition and in his responses to OFAC's follow-up questionnaires. Yet the petition has never been acted upon and Mr. Bugayenko remains sanctioned.

**C. Mr. Bugayenko's Victimization and Exposure of Official Corruption in Russia**

31. Mr. Bugayenko's withdrawal from Russia was prompted in part by his concerns about the direction of Russian politics and Russia's rampant official corruption. Between 2010 and 2020, Mr. Bugayenko's businesses were subject to dozens of extortion demands by Russian government and law enforcement officials.

32. In 2012, Mr. Bugayenko filed a lawsuit and secured a $20 million judgment against a notorious Russian fraudster, Viktor Baturin, the brother-in-law of the then Mayor of Moscow. After the judgment was issued, approximately 70 men, many of them armed and carrying badges from the Federal Security Service ("FSB") and Ministry of Internal Affairs ("MVD"), surrounded Mr. Bugayenko's office and told him that instead of collecting on the court judgment, Mr. Bugayenko had to pay $40 million to the defendant. Fortunately, Mr. Bugayenko's bodyguards were able to smuggle him to safety by sneaking him out of the back entrance and in

the backseat of a car. The thugs eventually lost interest in the matter, but the situation obviously caused Mr. Bugayenko a great deal of distress.

33. Another incident took place in 2020, when Mr. Bugayenko's home was searched for five hours by MVD officers in connection with a case where Mr. Bugayenko was not suspected of any wrongdoing. Mr. Bugayenko was informed that he was only a witness and that the investigation was aimed at a third party. Nevertheless, the officers conducting the search seized Mr. Bugayenko's documents and phone (which was later returned completely destroyed), and took an agreement pertaining to a bank safety deposit box, which allowed them to withdraw $600,000 from his account. No charges were ever brought against Mr. Bugayenko, since no incriminating evidence was produced by the search.

34. The 2020 raid was the last straw for Mr. Bugayenko and he decided to make a public statement against corruption in Russia and to simultaneously make clear to state officials, once and for all, that he would not pay bribes and could not be recruited into their criminal schemes. To these ends, on September 2, 2021, he published an article entitled "*Should we rely on the old ways of protecting business and capital in the Russian realities?*" on the website of Ekho Moskvy,[7] an opposition radio station and media outlet which was censored by the Russian government for its coverage of the war in Ukraine and forced to liquidate as a result. In the article, Mr. Bugayenko described in detail how Russian law enforcement abuses the criminal justice system to extort businesspeople through fabricated criminal charges. *See* Ex. 1.

35. Exposing himself and his family to significant risk, Mr. Bugayenko made clear in the article that responsibility for Russia's pervasive corruption lies with Putin and his circle

---

[7] The original text of the article is available at
https://web-arhive.ru/page?url=https%3A%2F%2Fecho.msk.ru%2Fblog%2Fd_bugaenko%2F2897156-echo%2F&date=20211121.

of cronies. For example, he asserted that the richest people in Russia are not creative entrepreneurs, but rather those with high level government connections, such as classmates of "the most respected man in the country" (an unambiguous reference to Putin), contractors for state monopolies, directors of government-owned enterprises, brothers of governors, and sons of ministers. He also explained that Putin's FSB allies (referred to in Russia and in the article as "siloviki") had formed "family dynasties" built on bribe taking. Finally, he warned Russian entrepreneurs against falling prey to the myth that they will be protected if they hide their money in opaque offshore trust structures and/or have high level political "protection."

36. After the publication of this article, Mr. Bugayenko understood that he could not remain in Russia safely and decided to complete his exit, which had been underway for several years.

**D. The Sanctions on Mr. Bugayenko Undermine U.S. Policy Goals**

37. IEEPA endows the President of the United States with certain powers to deal with an unusual and extraordinary threat to national security upon declaration of a national emergency. 50 U.S.C. § 1701. These powers include the power to impose economic sanctions on foreign entities and individuals. *See* 50 U.S.C. §§ 1702 – 1703. On April 15, 2021, President Biden issued E.O. 14024, which authorized the imposition of discretionary sanctions on various sectors of the Russian economy, and also granted the Secretary of the Treasury, in consultation with the Secretary of State, and the Secretary of State, in consultation with the Secretary of the Treasury, the power to designate persons determined to meet certain criteria. E.O. 14024 also authorizes the Secretary of the Treasury to determine additional sectors of the Russian economy to be subjected to the imposition of discretionary sanctions. E.O. 14024 § 1(a). Pursuant to this authority, OFAC, as a division of the Department of the Treasury, has designated certain persons,

including the Plaintiffs, who allegedly operate or have operated in the financial services sector of the Russian economy.

38. The intent behind the sanctions was made clear upon issuance. In E.O. 14024, President Biden declared a national emergency to address the following "Specified Harmful Foreign Activities of the Government of the Russian Federation":

a. undermining the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners;

b. engaging in and facilitating malicious cyber-enabled activities against the United States and its allies and partners;

c. fostering and using transnational corruption to influence foreign governments;

d. pursuing extraterritorial activities targeting dissidents or journalists;

e. undermining security in countries and regions important to United States national security; and

f. violating well-established principles of international law, including respect for the territorial integrity of states.

39. In his 2022 State of the Union address, President Biden further explained that the sanctions were part of a broader U.S. policy of "inflicting pain on Russia and supporting the people of Ukraine … cutting off Russia's largest banks from the international financial system [and] choking off Russia's access to technology that will sap its economic strength and weaken its military for years to come."[8]

40. Mr. Bugayenko has never participated in any of the "Specified Harmful Foreign Activities" enumerated by E.O. 14024 and has never been involved in Russian foreign

---

[8] *State of the Union Address*, The White House (March 1, 2022) https://www.whitehouse.gov/state-of-the-union-2022/.

policy in Ukraine (or anywhere else). Thus, Mr. Bugayenko did not understand why he was sanctioned and repeatedly sought clarification. He first requested OFAC's administrative record, through counsel, on August 8, 2023, and followed up on this request in his application for recission on December 4, 2023, also requesting the records for Veles International and Hadlerco. Although the records for Veles International and Hadlerco were never provided, finally, on November 21, 2024, OFAC provided a courtesy document that "identif[ied] unclassified information underlying . . . Mr. Bugayenko's designation pursuant to Executive Order 14024."[9]

41. This document, annexed as Exhibit 2, is heavily redacted and consists of perfunctory citations to (1) Defendants' own regulations, (2) various due diligence screening websites, (3) the website of Veles International, and (4) an award nomination by a Russian organization naming Veles Capital as the "Investment Firm of the Year," and Mr. Bugayenko (through Veles Capital) as "Gentleman of the Year in Private Banking and Wealth Management." (With respect to the latter, this is an unsponsored rating which was issued after Mr. Bugayenko had lost influence over Veles Capital, and which he was not aware of prior to its public release.) Nothing in the courtesy document suggests any impropriety on the part of Mr. Bugayenko or the other Plaintiffs or any connection to Russian politics or the war in Ukraine. Moreover, the courtesy document makes no reference to Mr. Bugayenko's article denouncing official corruption in Russia, suggesting that the Defendants were not even aware of it when they inexplicably decided to sanction Mr. Bugayenko as part of their effort to combat Russian aggression.

42. Thus, Defendants' rationale appears to be based entirely on Mr. Bugayenko's prior and entirely legal involvement in the Russian financial services sector. Based on this sparse rationale, Mr. Bugayenko's life has been entirely upended. His accounts, including

---

[9] On October 22, 2024, Plaintiffs each requested the full administrative record through the Freedom of Information Act.

15

Euro-denominated accounts in Cyprus and the accounts of Hadlerco (which holds most of his assets), have all been frozen, leaving him unable to engage in routine transactions and unable to pay school tuition for his children.  Mr. Bugayenko was also unable to register title to his apartment in Cyprus as an indirect consequence of the sanctions. Meanwhile, Veles International, whose accounts have also been frozen, is under threat of being overtaken and liquidated by the Cyprus Securities and Exchange Commission if the designation is not rescinded.

## Causes of Action

### Count I:
### Defendants' Designation of Plaintiffs, and Their Continued Refusal to Rescind the Designation, is a Violation of the APA Because it is Arbitrary and Capricious and Runs Counter to the Evidence and is Implausible

43. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in all preceding paragraphs.

44. Under the APA, courts must "hold unlawful and set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).  Although the scope of review under the arbitrary and capricious standard is narrow, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  An agency action is arbitrary and capricious if it has relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.

45. Defendants have never proffered any rational connection between the national security emergency created by Russia's invasion of Ukraine and their designation of Plaintiffs.  Nor can any rational connection be discerned based on the undisputed facts.  Mr. Bugayenko is a Cypriot citizen who has spoken out against Russian corruption, has exited both

Russia and the Russian financial services sector, and has limited remaining personal ties to Russia. Veles International and Hadlerco, which were designated due to their connection to Mr. Bugayenko, likewise have no connection to the crisis in Ukraine. Veles International is focused on markets outside of Russia and is currently in the process of being sold to an American buyer. Hadlerco, an instrumentality for Mr. Bugayenko's personal investments, never participated in the Russian financial services sector other than to trade in certain publicly listed securities. Indeed, as an entity incorporated in an "unfriendly" country, Hadlerco is effectively barred from initiating new investments in Russian securities. None of the Plaintiffs have any connection to the Russian government and none have contributed to Russia's military actions in Ukraine, or to Russia's foreign policy anywhere else in the world. Thus, their designation is arbitrary and capricious.

### Count II:
### Defendants' Designation of Plaintiffs Exceeds Statutory Authority Delegated to it Under E.O. 14024

46.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in all preceding paragraphs.

47.     Under the APA, courts must hold unlawful and set aside any agency action that is that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(C). Recently, the Supreme Court held that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

48.     E.O. 14024 is authorized by IEEPA, and IEEPA dictates the statutory jurisdiction, authority, and limitations for E.O. 14024. Thus, agency actions that are taken pursuant to E.O. 14024 cannot exceed the statutory constraints imposed by IEEPA. Because IEEPA explicitly states that it is intended to "deal with any unusual and extraordinary threat, which

17

has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," any action pursuant to E.O. 14024 that does not address such a threat would be outside the scope of the statute. *See* 50 U.S.C. § 1701(a)

49. Without any identified connection to the Russian government, military or foreign policy, there can be no connection to a threat to the national security, foreign policy, or economy of the United States as required by IEEPA. The sanctions on Plaintiffs do nothing to isolate Russia economically or cut off potential sources of funding for Russian aggression, particularly when Mr. Bugayenko has already exited the financial services sector. There is no reason to believe that Mr. Bugayenko's past conduct could contribute to a current threat to U.S. national security, especially when he has publicly denounced official corruption in Russia and has left Russia. The conclusion is even more attenuated for Veles International and Hadlerco, which never participated directly in the Russian financial services sector. By imposing these sanctions, Defendants have gone outside the scope of activity that is authorized by IEEPA.

**RELIEF REQUESTED**

Wherefore, Plaintiffs respectfully request that this Court:

A. Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiffs' designations under E.O. 14024 and removal of his name from OFAC's SDN List;

B. Order Defendants to issue a written, reasoned decision on Plaintiffs' pending delisting petition;

C. Grant an award to Plaintiffs of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

D. Such other and further relief as the Court may deem proper.

Dated December 16, 2024:

                              Respectfully Submitted,

                              */s/ Thomas A. Firestone*
                              Thomas A. Firestone (DC Bar: 1500468)*
                              SQUIRE PATTON BOGGS (US) LLP
                              2550 M Street, NW
                              Washington, DC 20037
                              Telephone: (202) 457-6000
                              Facsimile: (202) 457-6315
                              thomas.firestone@squirepb.com

                              Tamara Rozina**
                              SQUIRE PATTON BOGGS (US) LLP
                              1120 Avenue of the Americas, 13th Floor
                              New York, NY 10036
                              Telephone: (212) 872- 9800
                              Facsimile: (212) 872- 9815
                              tamara.rozina@squirepb.com

                              *Counsel for Plaintiff*

                              \* LEAD ATTORNEY TO BE NOTICED
                              \*\* *pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I, Thomas A. Firestone, certify that on December 16, 2024, I caused a copy of the foregoing to be served on all counsel of record.

                              */s/ Thomas A Firestone*
                              Thomas A. Firestone